ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. I. L. MILLS.

Decided January 20, 1909.

**1.—Jurisdiction—Transitory Actions—Foreign Laws—Constitutional Law.**

Actions for damages for injuries to the person arise by virtue of the common law, are transitory, and may be brought in the State where the wrongdoer is found; and the provision of the Constitution of the United States requiring the courts of one State to give full faith and credit to the public Acts, records and judicial proceedings of every other State, does not deprive the courts of the State in which such action may be brought of jurisdiction on account of a statute of the State in which the injury was inflicted which requires that the injured party shall sue in such State or forego his right of recovery.

**2.—Limitation—Action for Personal Injuries.**

An action for injuries to the person is transitory, and when brought in a State other than that in which the injury occurred, the law of limitation of the forum controls.

**3.—Same.**

When an injury to the person occurs in one State and the suit is brought in another, a statute of the former providing no suit shall be maintained unless instituted in the courts of that State within one year from the time the right of action occurred, if applicable, will not defeat a recovery unless it appears that both parties continued to reside in such State during the full period of limitation so that it could act upon the parties and the cause of action.

**4.—Negligence—Master and Servant—Concurring Negligence.**

Where the negligence of the master concurs with the negligence of a fellow servant in causing injury to the servant, the master will be liable.

**5.—Same.**

A party will be held liable for negligence which is the proximate cause

of an injury no matter how many other causes may have concurred with the primal cause.

### 6.—Same—Proximate Cause.·

The proximate cause is not always the one nearest the accident. If the original negligence is the direct and culpable cause of the injury, it will not relieve the original wrongdoer from liability because subsequent events and agencies may have concurred with the original negligence in bringing about the injury.

### 7.—Same—Defective Appliances.

Where a fireman went under a standing engine in the absence of the engineer and was injured by the automatic moving of the engine, and such movement was caused by a defective valve, negligence on the part of the railway company in furnishing the defective appliance was the direct and proximate cause of the injury, and it could not be relieved from liability because of concurring negligence on the part of the engineer.

### 8.—Submission of Issues—Charge—Harmless Error—Negligence.

Where the negligence alleged and shown was that the master had furnished a defective appliance, and in the charge applying the law to the facts, the jury were clearly instructed that the injured servant could not recover unless he was injured through the negligence of the master in furnishing the defective appliance, an abstract proposition in the preamble of the charge that "when a servant enters the employment of a railway company he has a right to rely upon the assumption that the company will exercise ordinary care to furnish him with a reasonably safe place to work," was not misleading, no such issue being submitted.

### 9.—Negligence—Charge—Concurring Negligence.

A charge cannot be held erroneous because it fails to define the term concurring negligence as used therein, in the absence of a request for a special charge supplying the omission.

### 10.—Same.

A charge that the defendant would be liable if it had been guilty of negligence "in omitting to do any acts or things which you have found to have caused the injury," read in connection with the preceding part of the same section which confined the "acts and things" to the condition of the defective appliance, was not misleading.

### 11.—Contributory Negligence—Comparative Negligence.

Where the action was against a railway company for injuries inflicted upon the person of an employe in the territory of New Mexico, and the court instructed the jury to find for the company if the employe had been guilty of contributory negligence, the defendant could not complain of a failure to give in charge the provision of the Act of Congress of June 11, 1906, as to comparative negligence.

### 12.—Fellow Servant.

Where the court instructed the jury that the injured servant could not recover from the railway company if the injuries were caused by the acts of a fellow servant, the company could not complain of a failure to give in charge the provisions of the Act of June 11, 1906, which destroys such defense.

Appeal from the District Court of El Paso County. Tried below before Hon. J. R. Harper.

*Terry, Cavin & Mills* and *A. H. Culwell,* for appellant.—The court erred in overruling defendant's plea to the jurisdiction of, and in bar of, the right of the plaintiff to sue in this State. Under the laws and under the Constitution of the United States it is the duty of

the courts of one State to give full faith and credit to the public Acts, records and judicial proceedings of every other State or Territory, and it appearing in this case that there was a public Act in the Territory of New Mexico controlling and governing suits and actions of this character, and it further appearing that the cause of action out of which this suit arose occurred within the Territory of New Mexico while said Act was in effect, it was the duty of the court trying this case to give full force, faith and credit to such Act of said Territory, and to enforce the provisions thereof.

The appellee acquired no greater rights by coming to Texas and filing this suit than he would have had if he had remained in New Mexico and prosecuted his cause of action, and not having presented claim and filed suit within twelve months, as required by law, he had no cause of action in New Mexico, and none in his behalf could therefore be created in Texas. Southern Pacific v. Dusablon, 106 S. W., 766; Swisher v. A., T. & S. F. Ry. Co., 90 Pac., 812; Slater v. Mexican National Railroad, 194 U. S., 120; Poff v. New England Tel. & Tel. Co., 55 Atl., 891; Dennis v. Atlantic Coast Line Railroad, 49 S. E., 869; Rodman v. Mo. Pac. Ry. Co., 70 Pac., 642; "The Harrisburg," 119 U. S., 199; Coyne v. Southern Pacific, 155 Fed., 683; Davis v. N. Y. & N. E. R. R., 143 Mass., 301; Higgins v. C., N. E. & W. Ry. Co., 155 Mass., 176; Nonce v. R. & D. R. R., 33 Fed., 435; Burns v. Grand Rapids R. R., 15 N. E., 230; McLean v. Ft. W. & Rio Grande, 203 U. S., 38; Martin v. Pittsburg & Lake Erie, 203 U. S., 284; Hancock National Bank v. Farnum, 176 U. S., 640; Great Western Tel. Co. v. Purdy, 162 U. S., 329; Pennsylvania R. R. v. Hughes, 191 U. S., 477; Baltimore & P. R. R. v. Hopkins, 130 U. S., 210; Chicago, R. I. & P. R. R. v. Thompson, 100 Texas, 185; Mexican National v. Jackson, 89 Texas, 107; St. Louis, I. M. & S. Ry. v. McCormick, 71 Texas, 660; Texas & Pac. Ry. v. Richards, 68 Texas, 375.

*Patterson & Wallace,* for appellee.

FLY, Associate Justice.—This is a suit for damages instituted by appellee, and a trial resulted in a judgment for him in the sum of $7,500. This is a second appeal, the opinion in the first being reported in 49 Texas Civ. App., 349.

Appellee was a fireman in the employ of appellant, and on November 14, 1906, while acting in the line of his duty, he went under an engine that was standing still and the engine automatically moved backward and crushed his right leg so that it had to be amputated about five inches below the knee. The movement of the engine was caused by a throttle valve which leaked, which defect was not known to appellee. He was an inexperienced man, having been in the railroad service only a few weeks. The direct and proximate cause of the injury was the negligence of appellant in failing to use ordinary care in repairing the engine. Other conclusions of fact are reached in connection with the consideration of the assignments of error.

The uncontradicted testimony showed that appellee was a resident of California when the injuries were inflicted. Appellee swore that

he had been in the service of appellant for about eight weeks before the accident occurred; that when he was employed he was a citizen of Los Angeles, California, being a voter there, and that he did not intend to make New Mexico his home. He stated: "At the time of the accident, on the fourteenth day of November, 1906, my home was in Los Angeles, California. I was a citizen of that city at that time." Being a citizen of California, he could not be compelled by a territorial law to bring suit for his damages in a court of the territory or forego his right to recover. For reasons satisfactory to this court and to the Supreme Court of Texas, we have held that such requirement did not bind the citizens of any State of the Union. Atchison, T. & S. F. Ry. v. Sowers, 99 S. W., 190. In that case it was said: "The State of Texas is bound, under section 1, article 4 of the Constitution of the United States, to give full faith and credit to the public acts, records, and judicial proceedings of every other State, but it is not required to recognize a statute of any State that seeks to fix the jurisdiction of Texas courts and prevent the citizens of other States from using its courts, if they so desire, in the enforcement of their rights. The jurisdiction of our courts must and will be prescribed by the constitutional and legislative authority of our State, and not by that of any other State. A law attempting such interference is null and void, and as such does not come within the constitutional provision aforementioned."

This court is asked by appellant to give careful consideration to the case of Swisher v. Atchison, T. & S. F. Ry., 90 Pac., 812, a decision by the Supreme Court of Kansas, the statement being made that the "identical question was considered as is involved." We find, however, that the case was one in which the parents of John W. Swisher had sued for damages alleged to have accrued by reason of his death in New Mexico, and a dismissal of the suit in the lower court was sustained on the ground that the cause of action for damages arising from the death of a person was not given by the common law, but was created by the law of the Territory, and the right to sue could only exist with the restrictions contained in that law. The court, after quoting from several authorities, said: "We think that an action in this State for a wrongful death occasioned in another State or Territory is incumbered with all the limitations and burdens which may have been imposed by the statutes of the State where the right of action was created." We believe that to be a correct enunciation of law, but it was announced in a very different case from this and does not apply to an action arising by virtue of the common law, and not by statute. Appellee does not have the right to appear in court and seek redress by virtue of the law of New Mexico, but by virtue of the common law which extends to him the right to sue for damages arising from injury to his person wherever he may find the party that inflicted the injury on him.

This being a transitory common law action, appellee had the right to sue the wrongdoer wherever he could find him, and the laws of limitation as applied to such action in the State where the action is instituted, and not those of the place of the injury, would prevail. If the right of action depended on the statute of the Territory, then the

bar created by statute, if the action was not instituted in a certain time, would bar the action wherever instituted, but the rule is different where the cause of action exists independent of statutory provision and the law of the forum would prevail. (Gautier v. Franklin, 1 Texas, 732; Williams v. St. Louis & S. F. Ry. (Mo.), 27 S. W., 287.)

Appellee did not institute his suit under or by virtue of the statute of New Mexico, but as a citizen of California he exercised his common law right to sue appellant in Texas because he found appellant here, and the law of the forum that he chose, as to limitations, must be applied to his action, and not a provision of a law of New Mexico. The law of New Mexico did not give him his right of action; he does not invoke that law in aid of his action, but he has invoked the aid of a law as broad as the confines of civilization, and under is beneficent operation asks redress for the wrongs perpetrated on him.

If, however, it should be concluded that by the enactment of the law invoked by appellant the common law right of action was annulled, and that by the provisions of the statute no one could sue a railroad corporation for inflicting injuries to his person unless various and sundry onerous and harassing conditions were complied with, and unless the suit was instituted in a Territorial court within one year from the time the right of action accrued, still the provision as to the suit being brought in one year could have no application to the rights of appellee unless it appeared that he and appellant had continued to reside in New Mexico during the full period of limitations so that it could act both upon the parties and the cause of action. (Story Conflict of Laws, 581; Wood, Lim., sec. 8, p. 34; Finnell v. Southern K. Ry., 33 Fed., 427; Canadian Pac. Ry. v. Johnston, 61 Fed., 738; Williams v. St. Louis & S. F. Ry. (Mo.), 27 S. W., 387; Nonce v. Richmond & D. Ry., 33 Fed., 429.)

The statute of New Mexico does not attempt to give a right of action for damages arising from personal injuries, but provides that an existing right shall not accrue unless certain provisions are complied with. The statute did not purport to grant any new right, but its sole purpose as is evidenced by its preamble was to prevent citizens who might be injured in their persons within the bounds of the Territory from exercising their right to sue where they might find the wrongdoer, and then, if they had the desire to sue in its courts, to prescribe such onerous and vexatious requirements that they would rather have their wrongs unredressed than to attempt to run the gauntlet of the statutory provisions. Of course all those conditions were prescribed because persons seemed disposed to rather shun the Territorial courts "to the increased cost and annoyance and manifest injury and oppression of the business interests of this Territory, and in derogation of the dignity of the courts thereof." It did not attempt to create a new right, but rather to abridge and throttle an old one, and the courts of the different States are under no obligations of comity or otherwise to lend any aid to the strangling process when it is applied to those who do not live within the bounds of the Territory. We have said this in view of the rule that where a cause of action is created by statute and a period of limitation is prescribed therein, it

would bar the action if the time has elapsed before suit is brought, no matter where it might be instituted. The law in question does not come within the rule.

As is said in the cited case of Finnell v. Railway: "The rule is different, however, with respect to action given by the common law. As suits may be brought upon causes of action arising under the common law wherever service can be obtained, it is difficult to understand how a statute of limitation of one State, even though it extinguishes a cause of action after the lapse of a certain period, can have any extraterritorial effect unless both parties to be affected by the statute reside within the State where the law prevails for the statutory period. In that event, if they removed to a foreign jurisdiction and suit is brought upon the cause of action, it is reasonable to hold them bound by the laws of the State under which they both lived and which extinguished the cause of action before they removed therefrom. As soon as the plaintiff in the suit at bar sustained the injury of which he complains, he returned to the State of Missouri, of which State he was a resident. He had a cause of action for the wrong done him under the laws of this State, and under the laws of every other State where the common law prevails, the moment the injury was sustained, although it was sustained in Kansas, and the statute of Kansas did not in my opinion extinguish that cause of action in Missouri because he did not remain for the period of two years subject to the operation of that statute."

Undoubtedly if an injured person has the right to bring his action for damages wherever he finds the one who has committed the wrong, he should have extended to him the facilities and benefits of the forum of his choice, and not be forced to go for rules into a strange and unfriendly community where the laws seem to proceed on the principle that every injured person should be hedged about with difficulties, should he seek redress in the courts for his injuries. In the case of Ross v. Kansas City S. Ry., 34 Texas Civ. App., 586, the complaining party was a resident of Louisiana and was injured in that State where the common law was not and never has been in force, but actions for personal injury are purely statutory there and the plaintiff and defendant had been residents of Louisiana during the full period of prescription, and it was very properly held that the cause being barred by the laws of Louisiana, it was barred in Texas. This case comes under the exception that where a statutory liability is sought to be enforced and the statute creating the liability prescribes the time in which the suit must be instituted, and both parties reside in the State until that period has passed, the action will be barred by limitation wherever it may be instituted. That is an exception universally recognized, but this case does not come within its terms. It follows that the first, second, third and fourth assignments of error are without merit, as all of them are based on the assumption, which is not supported by the evidence, that appellee was a citizen of New Mexico when injured.

The special charges, the rejection of which is complained of in the fifth, sixth, seventh, eighth, ninth, tenth, eleventh and twelfth assignments of error, contained no proper matter but what had been given by the court to the jury. All of them ignored the rule that where the

negligence of the master concurs with the negligence of the fellow servant, the master will be liable. Indeed, in the fourteenth assignment the doctrine of concurring negligence on the part of the master is denied by appellant. No doctrine connected with the law of torts is better established than that a party will be held liable for negligence which is the proximate cause of an injury no matter how many other causes may have concurred with the primal cause in causing the injury. The proximate cause is not always the one nearest the accident, but if the original negligence is the direct and culpable cause of the injury, it would not relieve the original wrongdoer from liability because subsequent events and agencies may have concurred with the original negligence in bringing about the injury. (Jones v. George, 61 Texas, 346; St. Louis, A. & T. Ry. v. McKinsey, 78 Texas, 298; Gonzales v. Galveston, 84 Texas, 3; Mexican Nat. Ry. v. Mussette, 86 Texas, 708; Shippers Co. v. Davidson, 35 Texas Civ. App., 558; Lane v. Atlantic Works, 111 Mass., 136; Duerler v. Eichhorn, 44 Texas Civ. App., 638.)

Appellant was guilty of negligence in furnishing an engine with such defects that it would move automatically, and those defects formed the primary cause, without which the accident could not have occurred, and it can not shelter itself behind the concurring negligence of its engineer. The primary cause will be held responsible for the direct and proximate results flowing from it. As before stated, appellant ignored this phase of the law in its requested instructions and made the case turn on the negligence of the engineer without any reference to the original negligence of appellant. The law of fellow servants was fully covered by the charge of the court. The evidence showed that the engineer had used all the usual means to cause the engine to remain stationary and that he did not anticipate any movement on the part of the engine. He was not in the engine when it moved, and the movement was automatic and was caused by a defective throttle valve. Appellee had no knowledge whatever that the engine was defective. He was not acquainted with railroad appliances, being inexperienced in the business, and he was justified in the presumption that the engine would not move without the aid of any outside agency. It did not devolve on him to examine the engine for defects, but he was justified in believing, as any reasonable man would have believed, that the engine when stopped would not automatically start again. There was not the least evidence of want of care on his part.

The thirteenth assignment of error assails that part of the charge of the court which instructed the jury that "when a servant enters the employment of a railroad company he has the right to rely upon the assumption that the railway company will exercise ordinary care to furnish him with a reasonably safe place in which to do his work." The portion of the charge complained of is found in the fourth paragraph which contains merely explanatory principles applicable to master and servant. It stated nothing but abstract propositions, and in the subsequent paragraphs of the charge when the law is applied to the facts the jury was clearly instructed that appellee could not recover unless he was injured through the negligence of appellant in

furnishing the defective engine. No issue as to the duty of appellant to furnish a safe place for appellee to work was presented by the charge, and it can not be presumed that the verdict of the jury was affected by an abstract proposition in the preamble to the submission of the issues.

The fourteenth assignment of error can not be sustained. The fifth paragraph of the charge contains correct propositions of law, and, as stated therein, if appellant did not exercise ordinary care in selecting and maintaining reasonably safe appliances for the work required of its employes, and such want of care proximately caused the injury, appellant was liable no matter if the negligence concurred in producing the result. If appellant desired a definition of "concurring negligence" it should have requested it.

The clause complained of in assignment of error 14a could not have misled the jury. The jury was told that appellant would be liable if it had been guilty of negligence "in omitting to do any acts or things which you have found to have caused the plaintiff's injury," and this must be read in connection with the preceding part of the same section of the charge in which the "acts and things" are confined to the defective condition of the engine. No jury with even moderate intelligence would conclude from the charge that they might travel outside the pleadings and evidence to find "acts and things" upon which to hold appellant liable.

The evidence raised the question of the negligence of appellant and that of the engineer concurring to produce the injury, and the court was justified in submitting that issue to the jury.

The Federal Employers' Liability Act having been declared unconstitutional, the court did not err in not submitting the case under its provisions. (Atchison, T. & S. F. Ry. v. Mills, 49 Texas Civ. App., 349; Howard v. Illinois Cent. Ry., 207 U. S., 463.) The Act of Congress of 1908 could not affect the issues in this case.

There being no evidence whatever that appellee was a citizen of New Mexico, the court was under no obligation to present any such issue to the jury. All the evidence showed that appellee was a citizen of California when he was injured. The judgment is affirmed.

ON MOTION FOR REHEARING.

The Federal Act of June 11, 1906, hereinbefore cited, which it is claimed should have been given in charge to the jury, provides for the recovery of damages from common carriers by employes, or their representatives, arising from personal injuries or death inflicted by the negligence of officers, agents or employes, or defects in the appliances of such common carriers, for the rule of comparative negligence and the submission of all questions of negligence and contributory negligence to the jury. The Act also provides that no contract of employment, insurance, relief, benefit or indemnity for injury or death entered into by an employe shall constitute a bar to the action for damages. Every part of that Act applicable to the facts is the law of Texas and was given in charge to the jury, except as to comparative negligence and fellow servants. There was no evidence whatever of

contributory negligence on the part of appellee, and the doctrine of comparative negligence could have had no place in the case.

But admitting that the facts did show that appellee had been guilty of slight contributory negligence, and appellant had been guilty of gross negligence in comparison with that of appellee, then appellant can not reasonably complain of a failure to charge comparative negligence, because the court charged the jury to find in favor of appellant if appellee had been guilty of contributory negligence. Under the Federal Act appellee might have recovered something although he had been guilty of slight contributory negligence, but under the charge of the court he could not recover anything if he had been guilty of contributory negligence at all. The charge was therefore favorable to appellant. The Federal statute was enacted to protect employes and fix the liability of employers, and a failure to give it in charge would hardly injure the cause of the employer.

The court did not follow the Federal Act, which destroys the defense of fellow servant, but instructed the jury that appellee could not recover if the injuries were caused by the acts of a fellow servant. Can appellant complain of the failure to charge the Federal Act in this regard with any degree of consistency? Of course not, because the charge increased the burdens of appellee, and accorded appellant the benefit of a defense that is denied it by the Employers' Liability Act. It follows that it is immaterial whether the Federal Act is still in force in New Mexico or not, and our opinion on that subject is not necessary and may be withdrawn, because appellant has received the benefit of defenses against which the Federal legislation is directed, and it is in no position to invoke errors arising from not giving the provisions of the law in charge to the jury. It may also be noted that appellant did not request any instructions giving the Federal statute in charge to the jury. The provisions of that statute could have been of no possible benefit to it and the omission to ask for the instructions was doubtless caused by that fact. The motion for rehearing is overruled.

*Affirmed.*

Writ of error refused.